# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| James Knapp, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 10 C 03450 |
| | ) | |
| v. | ) | Judge Edmond E. Chang |
| | ) | |
| City of Markham; | ) | |
| David Webb, Jr., individually, and as | ) | |
| Mayor of the City of Markham; | ) | |
| Wade Ingram, individually, and as | ) | |
| Chief of the Markham Police Department; and | ) | |
| Pascal Crawford. | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff James Knapp alleges that the City of Markham, Mayor David Webb, Jr. (individually and in his official capacity), Chief of Police Wade Ingram (individually and in his official capacity), and former Chief of Police Pascal Crawford (collectively "Defendants") discriminated against him on the basis of his race in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* (Count 1) and the equal protection clause of the Fourteenth Amendment, 42 U.S.C. § 1983 (Count 2). Knapp's complaint also includes claims for violations of his right to free speech under the First Amendment (Count 3), breach of contract (Count 4), quantum meruit (Count 5), and violations of various state and federal wage statutes (Counts 6-8). Defendants have moved to dismiss [R. 23] Counts 1, 2, 3, 6, 7, and 8 pursuant to Federal Rule of Civil Procedure 12(b)(6). For the following reasons, the Court denies in part and grants in part the motion to dismiss.

# I.

At this stage of the litigation, we accept Plaintiff's allegations as true and draw reasonable inferences in Plaintiff's favor. In 1991, James Knapp, a Caucasian male, was hired by the City of Markham to work as a patrolman for the Markham Police Department (MPD). R. 20 (Compl.) ¶ 16. Over the years, Knapp received several promotions, served on the South Suburban Major Crimes Task Force, and maintained an exemplary record with the MPD. *Id.* ¶¶ 17-19. Knapp was also well-regarded by his colleagues. In February 2005, MPD employees wrote a letter to the Mayor of Markham, David Webb, Jr., advocating that Knapp be promoted to Chief of the Markham Police Department. *Id.* ¶ 21. Knapp received a promotion that year, but not to Chief of Police; rather, Knapp was promoted to the position of Deputy Chief in May 2005. *Id.* ¶ 17. Some time in 2005 Knapp learned that the Chief of Police, Pascal Crawford, planned to fire five officers for violating the City of Markham's residency requirement. *Id.* ¶ 23. Knapp met with Mayor Webb and recommended that, instead of termination, the officers should be given an opportunity to comply with the residency requirement. *Id.* ¶ 23. Knapp explained that the residency requirement had not been enforced for at least fifteen years. *Id.* Mayor Webb disregarded Knapp's advice, and Crawford fired the officers. *Id.* ¶ 24.

In 2006, the City of Markham approved a project, proposed by Knapp, to renovate the Markham Police Department building. *Id.* ¶¶ 76-77. The City agreed to compensate Knapp for his time, services, and expenses related to the renovation. *Id.*

The City budgeted $100,000 for materials, and Knapp purchased the materials for the renovation. *Id.* ¶ 83. Knapp worked on the renovation project for around one year. *Id.* ¶ 79. He devoted his holidays and at least ten hours every weekend to renovating the building. *Id.* ¶ 79. Knapp claims that it would have cost the City approximately $1,000,000 to hire a contractor to perform the renovations. *Id.* ¶ 82. Instead, the City agreed to pay Knapp and other individuals to do the work. *Id.* ¶ 78. However, Knapp claims that he was not compensated for the time he spent working on the MPD renovation project. *Id.* ¶¶ 78, 84-85. Knapp's contract and wage claims arise from the City's alleged breach of the renovation agreement.

Meanwhile, the officers who were fired for violating the residency requirement were preparing to arbitrate their claims for reinstatement. In early October 2006, Knapp received a subpoena to testify at the arbitration hearing. *Id.* ¶ 25. In mid-October, shortly before the hearing, Mayor Webb's administrative assistant, William Relford, contacted Knapp on two separate occasions and informed Knapp that Webb did not want Knapp to testify about how the City had failed to enforce the residency requirement for several years preceding the terminations. *Id.* ¶ 26. Knapp told Relford that he intended to comply with the subpoena and testify truthfully at the arbitration hearing. *Id.* ¶¶ 26-27. On October 26, 2006, Knapp attended the arbitration hearing and testified that the residency requirement had not been enforced during his tenure at the MPD. *Id.* ¶ 29. In 2007, the arbitrator ruled in the fired officers' favor and ordered them reinstated with back pay. *Id.* ¶ 30.

According to Knapp, after the arbitration ruling was issued, Defendants "engaged in a campaign of retaliation" against him. *Id.* ¶ 32. Knapp claims that Defendants' retaliatory acts included, among other things, interfering with his investigations, changing his office locks, falsely reporting Knapp missing from the job, and refusing to compensate Knapp for the work he performed on the MPD renovation project. *Id.* In June 2008, Knapp received a memorandum from then-Chief Crawford notifying Knapp that he was being demoted from his position as Deputy Chief of Police to the civil service rank of Sergeant. *Id.* ¶ 36. According to the memo, one of the reasons for Knapp's demotion was his failure to leave his city vehicle at the police station when not on call. *Id.* ¶ 37. However, Knapp had previously been told that this policy did not apply to him because he was the on-call detective for all major crimes and the South Suburban Major Crimes Task Force. *Id.* ¶¶ 35, 38. When Knapp inquired why he was being demoted, Crawford responded that Knapp should "know what this is about," but promised to explain further once he (Crawford) retired from the Department. *Id.* ¶ 41. Markham's city counsel appointed an African-American patrolman to replace Knapp as the Deputy Chief. *Id.* ¶ 43. Around one week after his demotion, Knapp was removed from the Major Crimes Task Force. *Id.* ¶ 44. Knapp contends that he was demoted and removed from the Task Force because of his race and in retaliation for testifying at the arbitration hearing. *Id.* ¶ 42. One year later, in June 2009, Knapp was demoted again – this time from his position in the Investigation Division to the Patrol Division. *Id.* ¶ 46. As with his first demotion, Knapp claims that

this adverse action was due to his race and in retaliation of his testimony at the October 2006 arbitration hearing. Id. ¶ 47.

In April 2010, Knapp filed a charge of race discrimination against the City with the Equal Employment Opportunity Commission and the Illinois Department of Human Rights. *Id.* ¶ 5. Knapp's charge is still pending. *Id.* ¶ 6; R. 50.

## II.

Under Federal Rule of Civil Procedure 8(a)(2), a complaint generally need only include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This short and plain statement must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. v. Twombly*, 550 U.S. 544, 555 (2007). The Seventh Circuit has explained that this rule "reflects a liberal notice pleading regime, which is intended to 'focus litigation on the merits of a claim' rather than on technicalities that might keep plaintiffs out of court." *Brooks v. Ross*, 578 F.3d 574, 580 (7th Cir. 2009) (quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002)).

"A motion under Rule 12(b)(6) challenges the sufficiency of the complaint to state a claim upon which relief may be granted." *Hallinan v. Fraternal Order of Police Chicago Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). "[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *McGowan v. Hulick*, 612 F.3d 636, 637 (7th Cir. 2010) (courts accept factual allegations as true and draw all

reasonable inferences in plaintiff's favor). A "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. —, 129 S. Ct. 1937, 1949 (2009) (quoting *Twombly*, 550 U.S. at 570). These allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. And the allegations that are entitled to the assumption of truth are those that are *factual*, rather than mere *legal* conclusions. *Iqbal*, 129 S.Ct. at 1950.

## III.

### A.

Defendants argue that Knapp's Title VII claim must be dismissed for failure to exhaust his administrative remedies. The statute provides that the initial charge of discrimination must be filed with the EEOC within 180 days of the alleged discriminatory act. 42 U.S.C. § 2000e-5(e). In "deferral states" such as Illinois, this deadline is extended from 180 to 300 days. § 2000e-5(f)(1); *Sharp v. United Airlines*, 236 F.3d 368, 372 (7th Cir. 2001). According to the statute, if the charge filed with the EEOC is dismissed, or if within 180 days from the filing of such charge the EEOC has not filed a civil action under this section, the EEOC must notify the claimant. 42 U.S.C. § 2000e-5(f)(1). At that point, according to the statute, "within ninety days after the giving of such notice a civil action may be brought against the respondent named in the charge." *Id.* As discussed below, because Knapp has not received notice of his right to sue, the Court dismisses Knapp's Title VII claim without prejudice.

**1.**

    As explained further below, the Court concludes that Knapp's Title VII claim is premature and dismisses Count 1 without prejudice. However, first, the Court will briefly address Defendants' alternative argument. Defendants argue that Knapp's Title VII claim is barred because he failed to timely file a charge of unlawful employment practices with the EEOC prior to bringing this action. Defendants claim that all but one of the alleged discriminatory acts fall outside of Title VII's 300-day statute of limitations. R. 37 at 2-4. The Court agrees that Knapp failed to timely file charges on his June 2008 demotion and removal from the Major Crimes Task Force. These acts occurred more than 300 days before the EEOC charge he filed on April 13, 2010. Therefore, Knapp would be precluded, in any event, from pursuing those claims in the instant litigation. With respect to Knapp's demotion from the Investigation Division to the Patrol Division in June 2009, Defendants concede that Knapp alleges that this incident occurred within the 300-day limitation period. *Id.* In the event that Knapp seeks to amend his complaint after exhausting his administrative remedies, the allegedly discriminatory June 2009 demotion would not be time-barred insofar as satisfying the requirement to timely file an EEOC charge.

    Defendants also claim that Knapp's hostile work environment claim is untimely because he does not identify the dates of the alleged harassment. *Id.* ; *see* Compl. ¶¶ 34, 56. In light of the exhaustion problem (see *infra*), it is not necessary to decide this issue, but it is worth noting that, pursuant to the continuing violation doctrine, a plaintiff may recover for acts that occurred outside of the statutory limitations period

so long as a charge is filed within 300 days of any one act that is part of the hostile work environment. *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 115 (2002). Knapp was not required under the notice pleading standard to provide specific dates for every event that he mentioned in his amended complaint. Thus, it would be premature at this juncture to assess the timeliness of Knapp's hostile environment claim or to assess whether the continuing violation doctrine would be applicable to acts that occurred outside of the filing period.

**2.**

Next, it is undisputed that Knapp has not received notice from the EEOC authorizing a suit against the City of Markham. According to Knapp's most recent status report (submitted to the Court on June 17, 2011), the EEOC is still investigating the charge of discrimination Knapp filed on April 13, 2010. R. 50 ¶ 2. Thus, the 180-day time period has long since passed and the EEOC has not made a decision with respect to Knapp's claim. However, the EEOC's delay does not render Knapp powerless. Under the statute, the EEOC *shall* issue notice of a claimant's right to sue if it has not filed a civil action within 180 days from the filing of the charge and the claimant makes a written request that such notice be issued. 29 C.F.R. § 1601.28(a)(1). (As a formal matter, because the respondent in this case is a governmental entity, the notice of right to sue should be issued by the Attorney General of the United States.[1] § 1601.28(d)(2).)

---

[1]In the event Knapp's charge is dismissed, the EEOC is the proper federal agency to issue the notice of right to sue. 29 C.F.R. § 1601.28(d). In all other cases, the Attorney General will issue notice. *Id.*

In any event, Knapp has a right to request that notice be issued so that he may proceed with his Title VII claim in federal court.

Knapp's status report does not indicate that he has requested a right-to-sue letter. Nor does the report allege that the EEOC or the Department of Justice has improperly refused to issue notice, which could be grounds for equitable modification of the requirement of a right-to-sue letter, *see, e.g., Sherman v. Standard Rate Data Serv.*, 709 F. Supp. 1433, 1437 (N.D. Ill. 1989) (listing eight possible grounds for invoking equitable modification), or perhaps invoking a futility exception to the exhaustion requirement. It seems that Knapp wishes to await the EEOC's determination, and he is entitled to do so. However, without a right-to-sue letter, Knapp may not pursue a claim under Title VII. Because Knapp's Title VII is premature, the Court dismisses Count 1 without prejudice. If and when Knapp receives the requisite notice, he may amend his complaint and add a Title VII claim.[2]

## B.

In Count 2, Knapp claims that Mayor Webb, Chief Ingram, and former-Chief Crawford's participation in the discriminatory conduct violated his rights under the equal protection clause of the Fourteenth Amendment. Compl. ¶¶ 58-64. Knapp alleges that the City's custom of discriminating against Caucasians and deliberate indifference

---

[2]As discussed *infra*, Knapp's equal protection claim is not dismissed and, therefore, the parties will be taking discovery on the City of Markham's alleged race discrimination. As a result, the Court does not anticipate that Defendants will be prejudiced in the event that Knapp's Title VII claim is added in the future.

for Knapp's rights also violates the equal protection clause. *Id.* Knapp seeks to hold Defendants liable for the alleged constitutional violations under § 1983. In response, Defendants argue that Count 2 must be dismissed as to all Defendants because Knapp does not state sufficient facts about the individual Defendants' alleged discriminatory conduct and the City's alleged policy. The Court disagrees.

To state a claim under § 1983, a plaintiff must allege that a defendant acting under the color of the law deprived him of a constitutionally protected right. *See Hernandez v. City of Goshen*, 324 F.3d 535, 537 (7th Cir. 2003). Section 1983 equal protection claims are predicated on the same elements as a disparate treatment claim under Title VII. *See Williams v. Seniff*, 342 F.3d 774, 787-88 (7th Cir. 2003). Thus, a claim under § 1983 alleging racial discrimination must allege intentional racial discrimination. *Rhodes v. Ill. Dep't of Transp.*, 359 F.3d 498, 504 (7th Cir. 2004). Knapp's complaint lists a number of specific adverse employment actions which, he claims, were committed with purposeful discriminatory animus by Webb, Ingram, and Crawford. Compl. ¶¶ 34, 36-47. He claims that he was twice demoted by Defendants because of his race. *Id.* ¶¶ 42, 47. Specifically, Crawford issued the memorandum notifying Knapp that he was being removed from his position as Deputy Chief. *Id.* ¶ 36. Knapp also states that the individual Defendants occupied positions of authority and were involved with MPD policy matters. *Id.* ¶¶ 11-13. Knapp's allegations are sufficient to state a § 1983 claim against the individual Defendants for racial discrimination.

With respect to the City of Markham, Knapp's complaint adequately alleges municipal liability. Plaintiffs in a § 1983 suit against a municipality need not meet any heightened pleading standards, but must only comply with conventional pleading standards. *Leatherman v. Tarrant Cnty. Narcotics Unit*, 507 U.S. 163, 165 (1993). "[A] local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is only when execution of a government's policy or custom . . . inflicts the injury that the government is responsible under § 1983." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978); *Walker v. Sheahan*, 526 F.3d 973, 977 (7th Cir. 2008) (a governmental unit is not liable under § 1983 unless the deprivation of constitutional rights is caused by its own policy or custom). Throughout his complaint, Knapp alleges that the City of Markham "has a pervasive and unconstitutional custom, practice, and policy of condoning discrimination against non-African-American employees." Compl. ¶¶ 33, 48, 53, 56-57, 61. He claims that the City has intentionally targeted and discriminated against Caucasian employees for years and lists examples of other employees who have filed complaints. *Id.* ¶ 33. Knapp alleges that the City Council appointed an African-American to the position of Deputy Chief after the Defendants demoted Knapp because of his race. *Id.* ¶¶ 42-43. This allegation is in line with Knapp's broader claim that the City of Markham maintains a practice of treating African-American employees more favorably than Caucasian and other non-African-American employees. Knapp's allegations are sufficient to state a claim of municipal liability at this stage.

Accordingly, Defendants' motion to dismiss Count 2 is denied.

11

## C.

Knapp's next claim for relief under § 1983 relates to his constitutional right to engage in protected speech under the First Amendment. Knapp claims that the backlash he experienced after testifying at the fired officers' arbitration hearing constituted unlawful retaliation, and that all Defendants are liable under this theory. Compl. ¶¶ 65-74. A First Amendment retaliation claim under § 1983 is subject to a three-step analysis: (1) the employee's speech must be constitutionally protected; (2) the employer's action must be motivated by the constitutionally protected speech; and (3) if the action was retaliatory, courts consider whether the employer has demonstrated that it would have taken the same action irrespective of the employee's speech. *Milwaukee Deputy Sheriff's Ass'n v. Clarke*, 574 F.3d 370, 376 (7th Cir. 2009). In this case, Defendants argue that Count 3 must be dismissed because Knapp's speech is not constitutionally protected. R. 23 at 10-12. Because Knapp has sufficiently alleged a claim of unconstitutional retaliation, the Court denies Defendants' motion to dismiss Count 3 at this early stage.

The First Amendment protects a public employee's right to speak as a citizen about matters of public concern under certain circumstances. *See Garcetti v. Ceballos*, 547 U.S. 410, 417 (2006); *Connick v. Myers*, 461 U.S. 138, 147-48 (1983); *Pickering v. Board of Education*, 391 U.S. 563, 568 (1968). In such circumstances, an employer may not retaliate against an employee for engaging in protected speech. *Massey v. Johnson*, 457 F.3d 711, 716 (7th Cir. 2006). In *Garcetti v. Ceballos*, the Supreme Court held that

in order to determine whether speech is afforded constitutional protection, the threshold inquiry is whether the employee was speaking as a private citizen. 547 U.S. at 421. The Constitution does not insulate public employees from employer discipline when their communications are made pursuant to their official duties. *Id.* If the employee is found to be speaking as a citizen, then the Court will analyze the content of the speech and balance the employee's interest in commenting on matters of public concern against the interest of the State as an employer in promoting the efficiency of the public services it performs through its employees. *Sigsworth v. City of Aurora*, 487 F.3d 506, 509 (7th Cir. 2007). "So long as employees are speaking as citizens about matters of public concern, they must face only those speech restrictions that are necessary for their employers to operate efficiently and effectively." *Garcetti*, 547 U.S. at 419 (citing *Connick*, 461 U.S. at 147).

Here, Defendants argue that Knapp's speech is not protected under the First Amendment because Knapp was speaking pursuant to his official duties. R. 23 at 11-12. Defendants contend that Knapp was issued a subpoena to testify in his official capacity as the Deputy Chief of Police, and was not called to testify as a private citizen. However, Knapp's complaint does not allege that he was asked to testify in his official capacity, nor are there any allegations or evidence at this stage showing that Knapp testified "because that is part of what he, [as Deputy Chief], was employed to do." *Garcetti*, 547 U.S. at 421. The complaint alleges that an arbitration hearing was held regarding whether it was improper for the Markham Police Department to fire police officers for violating the residency requirement. Compl. ¶¶ 25, 30. Knapp received a

subpoena to testify at the hearing and complied. *Id.* ¶¶ 25, 28-29. Based on the limited record, it is unclear at this stage whether providing the testimony was part of the tasks Knapp, as an employee of the MPD, was paid to perform. *See Garcetti*, 547 U.S. at 422. Also, Knapp has alleged that Mayor Webb, through his assistant, specifically told him *not* to testify at the hearing. Compl. ¶¶ 26-27. Thus, Knapp's allegations do not indicate that in testifying at the hearing, he was merely doing what was expected of him as the Deputy Chief of Police. *Cf. Sigsworth*, 487 F.3d at 511 (police detective was expected to report co-workers' misconduct to his supervisor as part of his official duties); *Spiegla v. Hull*, 481 F.3d 961, 963 (7th Cir. 2007) (correctional officer spoke pursuant to her official duties when she reported her immediate supervisor's breach of prison security policy to another supervisor); *Vose v. Kliment*, 506 F.3d 565, 570-71 (7th Cir. 2007) (police officer spoke pursuant to his official duties when he reported alleged misconduct that may have affected his unit).

Unlike the plaintiffs in *Sigsworth* and *Vose* (whose First Amendment claims were dismissed), Knapp was not reporting a work-related problem or concern to his supervisor. Rather, drawing reasonable inferences in Knapp's favor, Knapp elected to comply with a request to testify at an outside legal process – and he did so against his superior's wishes. Defendants do not point to any evidence that complying with a subpoena was part of the job duties that Knapp was expected to perform as the Deputy Chief of Police. Defendants' failure to demonstrate that Knapp provided the testimony pursuant to his official responsibilities at the MPD precludes dismissal at this stage.

Based on the facts alleged, it is plausible that Knapp was not "merely doing his job" when he testified at the arbitration hearing but, instead, spoke as citizen. *See Vose*, 506 F.3d at 571; *Ashcroft v. Iqbal*, 556 U.S. —, 129 S. Ct. 1937, 1949 (2009). The Court recognizes that, after discovery, it may be debatable whether Knapp was speaking in an official capacity or as a citizen. In the event that Defendants raise this issue in a motion for summary judgment, the Court will make a "practical" inquiry into whether Knapp's speech was part of his general responsibilities as the Deputy Chief of Police. *See Garcetti*, 547 U.S. at 424; *Vose*, 506 F.3d at 571 ("A public employee's more general responsibilities are not beyond the scope of official duties for First Amendment purposes.").

Defendants also argue that dismissal is proper because Knapp did not speak on a matter of public concern. Defendants contend that the content of Knapp's speech related only to the MPD's internal decision to fire officers who violated the residency requirement and, thus, should be characterized as an ordinary personnel dispute that is not constitutionally protected. R. 23 at 11. Thus, Defendants posit that even if Knapp was speaking as a citizen, his claim must be dismissed because he was not speaking about a matter of public concern. Again, the Court concludes that at this early stage Knapp's allegations are sufficient to show that his speech was constitutionally protected as a matter of public concern.

For instance, Knapp alleges that five Markham police officers were fired for violating the City's requirement that all officers live within certain residential limits. Compl. ¶ 23-24. Knapp was not one of the officers fired for violating the requirement,

and he does not allege that the residency issue affected *his* employment in any way –

a relevant fact when distinguishing between a purely personal matter versus a matter

of public concern. In addition, Knapp claims that Mayor Webb attempted to preclude

Knapp from testifying about the residency requirement at the arbitration hearing.

Knapp alleges that his decision to ignore Mayor Webb's requests and testify in favor

of the officers caused sufficient controversy to form the basis of a retaliation campaign

against him. At this stage, Knapp's allegations are enough to show that the dispute

regarding the residency requirement was a matter of concern to the general public.

When all reasonable factual inferences are drawn in Knapp's favor, Knapp has

stated a claim for retaliation under § 1983. The facts included in Knapp's complaint

sufficiently allege that he testified as a citizen about a matter of public concern at the

arbitration hearing. Knapp alleges that his testimony caused Defendants to demote

and harass him on multiple occasions. Defendants' motion to dismiss Count 3 is denied.

**D.**

Knapp alleges various claims that relate to the work he performed on the MPD

renovation project (Counts 4-8). Defendants argue that Counts 6 and 7, which are pled

in the alternative to Counts 4 and 5, must be dismissed because they are time-barred

and lack factual allegations sufficient to state claims under the Fair Labor Standards

Act (FLSA) and the Illinois Minimum Wage Law (IMWL), respectively. Defendants also

argue that Knapp's claim under the Illinois Wage Payment and Collection Act (IWPCA)

(Count 8), also pled in the alternative to Counts 4 and 5, must be dismissed for failure

to state claims against the individual Defendants. For the following reasons, the Court

grants Defendants' motion to dismiss Counts 6, 7, and 8 as to Defendant Ingram in his individual capacity, but otherwise the wage claims survive.

## 1.

The FLSA and IMWL both require employers to pay their employees one and one-half times their regular hourly wage for hours worked beyond forty hours in one week. 29 U.S.C. § 207(a)(1); 820 ILCS § 105/4a(1).   In this case, Knapp claims that Defendants did not pay him overtime wages when he worked in excess of forty hours in an individual work week. Compl. ¶¶ 104-105, 114-115. Specifically, Knapp alleges that he worked overtime on the MPD renovation project, which commenced in 2006 and continued over the course of approximately one year. *Id.* ¶¶ 76, 79. Knapp contends that each Defendant was an "employer" as defined by the FLSA and IMWL and, thus, are jointly liable for the alleged violations. *Id.* ¶¶ 97, 110. Claims brought under the FLSA and IMWL are evaluated using the same general analysis. *Driver v. AppleIllinois, LLC*, 265 F.R.D. 293, 298 (N.D. Ill. 2010) (citing *Condo v. Sysco Corp.*, 1 F.3d 599, 301 n.3 (7th Cir. 1993)); *see also* 56 Ill. Admin. Code 210.210 (2009) (FLSA regulations are to be used as guidance in interpreting the IMWL).

Defendants first argue that Knapp's FLSA and IMWL claims are barred, or at least limited, by the applicable statute of limitations. R. 23 at 12-13. The FLSA has a two-year statute of limitations that is extended to three-years for willful violations. 29 U.S.C. § 255(a). Courts in this district and others have found that, as a general rule, FLSA claims accrue at each regular payday immediately following the work period

during which the services, for which compensation is sought, were rendered. *See Nehmelman v. Penn Nat'l Gaming, Inc.*, 2011 WL 1988548, at *3 (N.D. Ill. May 20, 2011) (collecting cases). The statute of limitations for IMWL claims is three years. 820 ILCS 105/12(a). Because Knapp alleges that Defendants' violation of the FLSA was willful, Compl. ¶ 106, the Court will apply a three-year statute of limitations for both claims at this early stage in the litigation.[3]

Here, Knapp's complaint fails to allege when his claims arose, making it difficult to determine when the statute of limitations expired. Knapp alleges that his work on the MPD renovation project began in 2006 and extended into 2007. Compl. ¶¶ 76, 79. Knapp filed this lawsuit in 2010; therefore, it is possible that all or some of Knapp's claims fall within the three-year limitations period. The Court cannot conclude at this stage that Knapp's FLSA and IMWL claims are barred by the statute of limitations. Defendants' motion to dismiss Counts 6 and 7 as time-barred is denied.[4]

Defendants next argue that Knapp has failed to allege facts demonstrating that the individual Defendants are "employers" under the FLSA and IMWL. The FLSA defines an "employer" as "any person acting directly or indirectly in the interest of an employer in relation to an employee."[5] 29 U.S.C. § 203(d). The Supreme Court has

---

[3]Defendants do not contend that Knapp fails to state a claim for a willful violation, and thus Defendants make their limitations arguments assuming that the statute of limitations is three years. R. 37 at 10.

[4]Prompt discovery on this issue might quickly pin down the time-frame and thus narrow the scope of the claim.

[5]The IMWL similarly defines an "employer" as "any individual, partnership, association, corporation, limited liability company, business trust, governmental or quasi-

instructed courts to construe the terms "employer" and "employee" expansively to effect Congress's remedial intent in enacting the FLSA. *See Nationwide Mutl. Ins. Co. v. Darden*, 503 U.S. 318, 326 (1992). And it is well-settled that there may be more than one employer responsible for violations of the FLSA. *Falk v. Brennan*, 414 U.S. 190, 195 (1973). Those with supervisory authority over employees may be held individually liable as employers under the FLSA if they were either responsible in whole or in part for the alleged violation. *Riordan v. Kempiners*, 831 F.2d 690, 694 (7th Cir. 1987) (citing 29 U.S.C. § 203(d)).

Knapp alleges that Webb, Ingram, and Crawford acted as employees, supervisors, and final policymakers for the City of Markham. Compl. ¶ 60. He alleges that the individual Defendants refused to compensate him for work performed on the MPD renovation project. *Id.* ¶ 34. With respect to Webb, Knapp alleges that, at all relevant times, Webb served as the Mayor of the City of Markham and was a final policymaker with respect to various Police Department matters at issue in this case. *Id.* ¶ 11. Knapp also alleges that, as early as 2005, Mayor Webb was involved in MPD employment decisions and had influence over who occupied the position of Chief of Police. *Id.* ¶ 21. Knapp met with Mayor Webb in 2005 to raise his concerns about the proposed firings of officers who violated the residency requirement. *Id.* ¶ 23. This indicates that Webb likely had some control over the conditions of employment at the MPD. According to the complaint, Webb continued to serve as the City's mayor in 2007.

governmental body, or any person or group of persons acting directly or indirectly in the interest of an employer in relation to an employee." 820 ILCS 105/3(c).

*Id.* ¶¶ 30-31. Thus, Knapp has supplied facts relating to Webb's supervisory position during the time period he was allegedly denied overtime pay, and it is possible that Webb was at least partly responsible for the alleged violation. At this stage, Knapp has sufficiently alleged that Mayor Webb falls within the FLSA's definition of "employer."

Knapp also alleges facts that sufficiently demonstrate that Crawford was an employer under the FLSA. Knapp alleges that Crawford, as the former Chief of Police of the City of Markham, was a final policymaker with respect to various MPD matters at issue in this case. *Id.* ¶ 13. According to the complaint, Crawford held this position as early as 2005 through at least June 2008. *Id.* ¶¶ 23, 36. It is reasonable to infer that Crawford retained some control over Knapp's compensation and hours during the time Knapp worked on the MPD renovation project and, thus, may have been responsible in whole or in part for the alleged FLSA violation.

Although Knapp has alleged sufficient facts to state FLSA claims against Webb and Crawford, Knapp's complaint does not contain enough facts to state a claim against Ingram. To withstand a motion to dismiss, a plaintiff's allegations "must be enough to raise a right to relief above the speculative level." *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007). The Seventh Circuit has held that an individual may be liable for failure to comply with FLSA pay standards only if he had supervisory authority over the plaintiff *and* was at least partially responsible for the alleged violation. *See Riordan*, 831 F.2d at 694. According to Knapp's complaint, the alleged FLSA violations took place between 2006 and 2007. And in his response brief, Knapp

argues that Defendants are liable for pay periods that fall within the statute of limitations – which Knapp concedes only extends into the year 2007. R. 35 at 14. There are no facts showing that Ingram occupied a supervisory position in the MPD during the time period that the alleged violations occurred. Knapp states that Crawford was the Chief of Police who was involved in his June 2008 demotion. While Knapp alleges that Ingram is the current Chief of Police, his complaint does not include any allegations that Ingram had any involvement with the MPD or was even employed by the City of Markham while Knapp was working overtime on the MPD renovation project in 2006 and 2007. It would be speculative to infer that because Ingram is the current Chief of Police, he was somehow involved in supervising or issuing payments related to the renovation. Absent additional factual allegations linking Ingram to the decision to allow Knapp to work overtime hours on the MPD renovation project without compensation, Count 6 against Ingram, in his individual capacity, will be dismissed without prejudice.

The above analysis applies in the same manner to Knapp's IMWL claims against the individual Defendants. *Driver*, 265 F.R..D. at 298*; Morgan v. SpeakEasy, LLC*, 625 F. Supp. 2d 632, 650 (N.D. Ill. 2007) ("Courts have held that the IMWL parallels the FLSA, and that the same analysis generally applies to both statutes."); *Skelton v. Am. Intercontinental Univ. Online*, 382 F. Supp. 2d 1068, 1074 (N.D. Ill. 2005) (same analysis applies to claims made under the IMWL and FLSA). Thus, for the reasons already discussed, Knapp's IMWL claim against Ingram individually is dismissed without prejudice. And, as with Knapp's FLSA overtime claim, Defendants' motion to

dismiss the IMWL claims against Webb and Crawford, in their individual capacities, is denied.

**2.**

Finally, Defendants contend that Knapp's complaint fails to state claims under the Illinois Wage Payment and Collection Act (IWPCA or "Wage Act") against Webb, Ingram, and Crawford individually. R. 23 at 17-18. The IWPCA requires employers to pay all wages earned by an employee no later than thirteen days after the end of a bi-weekly pay period, and seven days after the end of a weekly pay period. 820 ILCS 115/4.

Similar to the FLSA and IMWL claims, Defendants argue that Knapp fails to sufficiently allege that the individual Defendants were Knapp's "employers" under the Act. The IWPCA defines the term "employer" in two different places. Section 2 is nearly identical to the IMWL's definition of "employer." It states that "the term 'employer' shall include any individual, partnership, association, corporation, business trust . . . or any person or group of persons acting directly or indirectly in the interest of an employer in relation to an employee, for which one or more persons is gainfully employed." 820 ILCS 115/2. Section 13, in turn, states that "any officers of a corporation or agents of an employer who knowingly permit such employer to violate the provisions of this Act shall be deemed to be the employers of the employees of the corporation." 820 ILCS 115/13. According to the Illinois Supreme Court, it is section 13, "and *not* section 2, that defines who, other than the employer itself, may be treated

as an 'employer' for purposes of the Wage Act." *Andrews v. Kowa Printing Corp.*, 838

N.E.2d 894, 899 (Ill. 2005). Thus,

> when considered together, section 2 and section 13 form a coherent and entirely
> sensible policy. Section 2 confirms that an employer is liable both for its own
> violations of the Wage Act and for any Wage Act violations committed by its
> agents. Section 13, in turn, imposes personal liability on any officers or agents
> who knowingly permitted the Wage Act violation. Unlike a literal reading of
> section 2, which imposes strict Wage Act liability upon all supervisory
> employees, this reading reserves personal Wage Act liability for those individual
> decision makers who knowingly permitted the Wage Act violation.

*Id.* at 899-900.

Here, just as with the FLSA and IMWL claims, Knapp's complaint does allege

facts that, if proven, would allow him to recover against Webb and Crawford

individually under the IWPCA. As described above, the complaint does allege Webb's

and Crawford's supervisory and policy-making responsibilities over the Police

Department and its employees. *See supra* at 19-20. To be sure, only persons who

knowingly permit a wage payment violation can be held personally liable, and reliance

on supervisory positions is not enough, by itself, to state a claim under the IWPCA, *see*

*Spaulding v. Abbott Labs.*, 2010 WL 4822894, at *6-7 (N.D. Ill. Nov. 22, 2010); *Bohr*

*v. Corrigan Moving Sys.*, 2009 WL 3517748, at *1-2 (N.D. Ill. Oct. 29, 2009). But the

complaint alleges that Knapp and the City of Markham, through its agents, mutually

agreed that Knapp would be compensated for his time, services, and expenses spent

working on the renovation project. Compl. ¶ 77. When read both literally and in

context, the complaint also alleges that Webb and Crawford refused to pay Knapp for

the renovation project. *Id.* ¶ 34. These allegations are sufficient to survive a motion to dismiss.

Ingram stands on a different footing. Just as with the FLSA and IMWL claims, there are no allegations that plausibly allege Ingram's involvement in refusing to pay for the renovation work, or that Ingram knowingly permitted others not to pay. Therefore, Count 8 is dismissed without prejudice against Ingram. *See Bohr*, 2009 WL 3517748, at *2 (allowing plaintiff to cure defects in pleading IWPCA claim against individual).

## IV.

For the reasons stated above, Defendants' motion to dismiss [R. 23] is granted without prejudice as to Count 1, and denied as to Counts 2 and 3. Defendants' motion is denied as to Counts 6, 7 and 8 against David Webb, Jr. (in his individual capacity) and Pascal Crawford. Counts 6, 7 and 8 are dismissed without prejudice against Wade Ingram in his individual capacity.

ENTERED:

Honorable Edmond E. Chang
United States District Judge

DATE: August 9, 2011

24